UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA																														Plaintiff

v.																Criminal Action No. 3:23-CR-139-RGJ-RSE

STACY ALLEN TAYLOR																														Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on the Motion of Defendant, Stacy Allen Taylor ("Taylor"), to revoke the Magistrate Judge's detention order. [DE 90]. The United States responded. [DE 99]. This matter is now ripe for adjudication. The Court has reviewed the parties' filings, the full transcript of the detention hearing, and the pretrial services report. For the reasons set forth below, Defendant's Motion to Revoke the Order of Detention is **DENIED**.

### I.    BACKGROUND

On November 21, 2023, the grand jury issued an indictment charging Taylor with one Count of Conspiracy to Commit Wire Fraud under 18 U.S.C. § 1343 and § 1349, two Counts of Wire Fraud under 18 U.S.C. § 1343, and four Counts of monetary transactions derived from specified unlawful activity under 18 U.S.C. § 1957. [DE 6 at 18]. At Taylor's initial appearance on April 26, 2024, the Government requested pretrial detention and Taylor waived his right to a detention hearing. [DE 76 at 335]. Taylor later filed a motion for pretrial release, [DE 78], and a detention hearing took place June 10, 2025. Finding that Taylor presented a risk of nonappearance at future proceedings, the magistrate judge ordered Taylor's detention pending trial. [DE 86 at 396; DE 82].

A pretrial services report was prepared by the United States Probation Office based on information provided by Taylor and Taylor's prior presentence report. The report recommended detention and stated that Taylor poses a risk of nonappearance to due to mental health history, aliases or false identifications, unexplained assets, and ties to a foreign country. The report also stated that Taylor poses a risk of danger due to a pattern of similar criminal activity.

On July 15, 2025, Taylor filed the instant motion to revoke his order of detention. [DE 90]. He argues that the United States failed to meet its burden of proof in establishing that he is a serious risk of flight and that the magistrate judge failed to fully consider Taylor's "history and characteristics." [*Id.* at 413, 418]. He notes that he has "substantial family ties" in the Western District of Kentucky, a partner of twelve years who resides with in the district, and a property in the district jointly owned with his partner. [*Id.* at 413-14, 418]. The United States responded in opposition. [DE 99].

## II.    STANDARD

18 U.S.C. § 3145(b) governs review of detention orders and provides that "[i]f a person is ordered detained by a magistrate judge . . . that person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." This Court reviews a Magistrate Judge's detention order *de novo*. *United States v. Demarcus Bristuan Fitzhugh*, No. 16-MJ-30364, 2016 WL 4727480, at *2 (E.D. Mich. Sept. 12, 2016) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir.1985)). On review, this Court engages "in the same analysis, with the same options, under § 3142 as the magistrate judge." *United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) (citing *United States v. Maull*, 773 F.2d 1479, 1482 (8th Cir. 1985)).

18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. It provides four options: (1) release on personal recognizance or after execution of an unsecured appearance bond, (2) release on a condition or combination of conditions, (3) temporary detention to permit revocation of conditional release, deportation, or exclusion, and (4) detention. 18 U.S.C. § 3142(a). A defendant must be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *see also United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004) (noting that the requirement is not one of "guarantee," but instead "reasonable assurance"). To merit an order of detention, the United States must prove either (1) that the defendant poses a serious risk of flight, *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); or (2) that he poses a risk to the safety of others and the community, *United States v. Stone*, 608 F.3d 939, 946 (6th Cir. 2010) (citing 18 U.S.C. § 3142(f)(2)(B)).

In determining whether there are conditions of release that will reasonably assure appearance of the defendant and safety of the community, the district court considers four factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal,

> or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g)(1)-(4). A judge's finding that no set of conditions will reasonably assure the appearance of the person and/or the defendant poses a threat to the safety of any other person in the community must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B). Proof of risk of flight is determined by a preponderance of the evidence. *United States v. Kirk*, No. 93-1459, 992 F.2d 1218 (6th Cir. 1993).

Section 3142(c)(1)(B) provides that, if a judicial officer determines the pretrial release of a defendant will endanger the safety of the community, the court must use "the least restrictive further condition, or combination of conditions" to reasonably assure the safety of the community. The statute goes on to provide an illustrative list of the types of conditions that the court may use to effect this purpose. 18 U.S.C. § 3142(c)(1)(B)(i)–(xiv); *United States v. Spivak*, 555 F. Supp. 3d 541, 549 (N.D. Ohio 2021).

Under Section 3142(e)(2), it shall be presumed, subject to rebuttal, that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the district court finds that there is probable cause to believe that the person committed certain enumerated offenses listed in Section 3142(e)(A)–(E). See *United States v. Webb*, 238 F.3d 426 (6th Cir. 2000). To rebut the presumption, the defendant must come forward with some evidence that he does not pose a danger to the community or a risk of flight. *Stone*, 608

F.3d at 945 ("Although a defendant's burden of production 'is not heavy,' he must introduce at least some evidence." (citations omitted)).

## III. DISCUSSION

The United States conceded at the detention hearing that Taylor's charges did not meet the criteria in § 3142(e)(2) for establishing a presumption of detention. [DE 86 at 384-85]. Instead, the United States took the position that Taylor should be detained because he poses a serious risk of flight. [*Id.*]. 18 U.S.C. § 3142(f)(2)(A) provides for a detention hearing in a case that involves "a serious risk that [a] person will flee." Section 3142(g)(1)-(4) then sets forth the factors the Court must consider in determining "whether there are conditions of release that will reasonably assure the appearance of the person . . . and the safety of any other person and the community." Consequently, there are two questions the Court must consider: (1) whether Taylor poses a "serious risk" of flight, and (2) whether, under the § 3142(g) factors, there are conditions of release that will nonetheless reasonably assure the appearance of Taylor and the safety of the community.

### A. Risk of Flight

Courts have noted that there is a difference between the "risk of flight" described in § 3142(f)(2)(A) and the risk of non-appearance described in § 3142(g). *See United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 595 (E.D. Ky. 2023); *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021); *United States v. Avila-Murillo*, No. 3:25-CR-00058-RGJ, 2025 WL 951949, at *4 (W.D. Ky. Mar. 28, 2025). While the risk of flight described in § 3142(f)(2)(A) serves as a "precondition to a detention hearing," the risk of nonappearance described in § 3142(g) contemplates "the analysis courts must undertake once a detention hearing goes forward." *White*, 2021 WL 2155441, at *8; *see also United States v. Gibson*, 384 F. Supp. 3d 955, 965 (N.D. Ind. 2019) ("While Congress chose to use "serious risk of flight"

in subsection (f)(2)(A) to describe this limited scenario under which a defendant will face a detention hearing, Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). The government has the burden of establishing by a preponderance of the evidence that the defendant poses a serious risk of flight. *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1140 (D. Idaho 2023). The preponderance of the evidence standard requires that the risk of flight be substantial, rather than speculative or theoretical. *Id.* (noting that "serious risk of flight" requires more than a mere possibility of nonappearance) (citing *White*, 2021 WL 2155441 at *7). The government must show a "great risk" that the defendant "will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Id.* at 1138.

At the detention hearing, the United States argued that Taylor poses a serious flight risk because he has been known to use an Irish passport with an alias, he has engaged in a pattern of questioning the legitimacy of the proceedings against him, and he claims to have significant wealth, which would allow him to travel easily. [DE 86 at 385-88]. In responding to Taylor's motion, the United States reasserts these arguments and notes that it has obtained Customs and Border Protection ("CBP") records indicating that Taylor has used his Irish passport to travel internationally. [DE 99 at 443]. In response, the defense asserts that there is no proof that Taylor has used the Irish passport for travel. [DE 90 at 416]. In arguing that he does not pose a serious risk of flight, Taylor points to his purported three years of "flawless compliance with federal supervised release," his "strong family ties" to this district, and the "lack of proof of any foreign travel." [DE 90 at 415-16].

Taylor has admitted to once possessing an Irish passport bearing his picture and the alias "David Stafford." [DE 55 Competency Hr'g Tr. At 200-01]. While the defense asserts that there

is no proof that Taylor has traveled out of the country, [DE 90 at 416], Taylor testified in his competency hearing that he was taken to Spain by "the Irish" using the David Stafford passport. [DE 55 at 200]. The pretrial services report further indicates that Taylor was arrested in Hong Kong in 2011 and was surrendered to the United States Marshals in 2012. Taylor also reported to probation that he has money hidden in a building in China. The United States additionally cites to CBP records that allegedly show that the David Stafford passport was used in 2009 to travel from Chicago to Germany, and then from Germany to Spain. [DE 99 at 443-44]. While the Court does not possess these records, it finds them unnecessary given the extent of other evidence demonstrating Taylor's ability and willingness to flee. In fact, regardless of whether Taylor has actually used the Irish passport or whether he still possesses the passport, the mere fact that he once possessed a fabricated passport presents a risk of flight. The existence of the passport alone demonstrates that Taylor has the means and inclination to obtain fraudulent travel documents and evade government observation.

Taylor has also at times claimed to possess significant wealth. For instance, he told his competency evaluator that he was a billionaire as a result of bitcoin investments. [DE 55 at 167]. Even if these lofty claims are simply a product of Taylor's propensity for grandiosity, this does not put the Court at ease. Rather, Taylor's tendency to exaggerate and alter his stories suggest a lack of reliability that lends itself to evading his obligations in this Court.

His criminal history further reflects a tendency to engage in crimes involving dishonesty, including several instances of fraud and obtaining property with a worthless check, as indicated in the pretrial services report. In addition, while he claims to have served in the Army for several years, after which he was honorably discharged, personnel records obtained by the probation office indicate that he served for less than three months and received an uncharacterized discharge.

7

Taylor also seems to doubt the legitimacy of the proceedings against him and filed a *pro se* civil complaint against the United States, asserting that the government's claims against him are "completely inaccurate" [*see* 3:24cv-728 DE 1 at ¶ 4]. While Taylor does have significant connections in the Western District of Kentucky, the Court does not believe that these connections outweigh the other facts that present a risk of flight.

In short, Taylor has demonstrated a proclivity for untruthfulness, which, combined with his past use of a falsified passport and apparent suspicion of these proceedings, creates a serious risk that he will flee.

### B. § 3142(g) factors

Satisfied that Taylor presents a serious risk of flight, the Court must next determine whether, under the § 3142(g) factors, there are conditions of release that will nonetheless reasonably assure the appearance of Taylor and the safety of the community.

### 1. Nature and Circumstances of the Offense Charged

Taylor is charged with conspiracy to commit wire fraud, wire fraud, and engaging in monetary transactions derived from unlawful activity. [DE 1]. Specifically, the United States alleges that Taylor tricked victims into "investing sums of approximately $1 million to $2 million dollars which they believe will be traded in unique ways on a limited-access trading platform." [DE 1 ¶ 2]. Although the charged offenses do not involve any of the crimes set forth in 18 U.S.C. § 3142(g)(1), they nevertheless present an investment scheme that brought in millions of dollars from several named victims. Moreover, the United States alleges that the means of committing the offense included the use of a fabricated Irish passport, the existence of which hampers the possibility of establishing conditions that will ensure Taylor's appearance.

8

If convicted, Taylor could face a large fine or a prison sentence of up to twenty years. 18 U.S.C. § 1343. Courts have recognized that lengthy prison sentences such as this weigh in favor of detention because they "provide[ ] a motive to flee." *United States v. Xiaorong You*, No. 2:19-CR-14, 2019 WL 2426659, at *3 (E.D. Tenn. June 10, 2019); *see also United States v. Hanspard*, No. CR 5:23-125-DCR, 2023 WL 7751777, at *5 (E.D. Ky. Nov. 15, 2023); *United States v. Anming Hu*, No. 3:20-CR-21, 2020 WL 1076039, at *5 (E.D. Tenn. Mar. 6, 2020).

Accordingly, although Taylor is not charged with a crime of violence, drug offense, or firearm offense, the nature of the offense is serious because it involves millions of dollars allegedly acquired through deception. The circumstances surrounding the offense are serious because Taylor allegedly used a falsified passport to carry out the fraud. Finally, the lengthy potential prison sentence the offense carries suggests there is a greater motive for Taylor to flee. In light of these considerations, the first factor weighs in favor of detention.

### 2. The Weight of the Evidence Against the Defendant

This factor "goes to the weight of the evidence of dangerousness [or risk of flight], not the weight of the evidence of the defendant's guilt." *United States v. Pruitt*, No. 3:22-CR-00079-CRS-RSE-3, 2024 WL 2140228, at *4 (W.D. Ky. May 13, 2024) (quoting *Stone*, 608 F.3d at 948). In other words, this factor asks not "whether probable cause has been established," but whether there is evidence that there are no "conditions which will assure the appearance of the accused and safety of the community." *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

Taylor is not accused of violent crimes, and the government does not suggest that his release would threaten the safety of the community. The evidence does not suggest that he poses a threat to the community other than the threat of further crimes of dishonesty. However, this factor also requires considering the weight of the evidence demonstrating a risk of nonappearance. The

Court has already concluded that Taylor presents a serious risk of flight due to his ability to obtain fraudulent travel documents, his untruthful nature, his claimed access to large sums of money, and his criminal history. As a result, the Court finds that this factor weighs in favor of detention.

### 3. The History and Characteristics of the Defendant

Next, the Court considers a wide range of factors relating to the Defendant's history and characteristics, including physical and mental condition, family ties, financial resources, length of residence in—and ties to—the community, employment history, and criminal history. 18 U.S.C. § 3142(g)(3)(A). The Court also must consider whether the defendant was "on probation, on parole, or on other release pending trial" at the time of the current offense. 18 U.S.C. § 3142(g)(3)(B).

The Court has already covered many of these factors in finding that Taylor poses a serious risk of flight, so it will not repeat them to the same extent here. There are certainly some considerations under this factor that weigh in favor of Taylor's release, including his ties to the Louisville area and his apparent compliance with the terms of his supervised release. Furthermore, Taylor did not commit the instant offense while on supervised release. However, despite his community ties and his "12 year relationship with his partner," [DE 90 at 416], Taylor has been convicted of repeated crimes of dishonesty. He also appears to lack consistent employment. He indicated to probation that he has owned and operated seventeen "flower shops" and two grocery stores, but his partner stated that all the businesses have been closed. He has represented that he has significant wealth, which, if true, gives him the means to flee, and, if false, simply contributes to a pattern of untruthfulness. Ultimately, this factor weighs in favor of detention.

### 4. The Nature and Seriousness of the Danger to any Person or the Community That Would be Posed by the Person's Release

Last, the Court considers the danger Taylor would pose to the community if released. Here, the government does not suggest that Taylor poses a danger, and Taylor's alleged offenses are not crimes of violence. However, this factor is not limited to physical danger to the community. Courts have recognized that financial crimes can impose economic harm on a community and therefore render a defendant dangerous. *See United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) (recognizing that a defendant convicted of financial crimes posed a danger to community, as "danger may, at least in some cases, encompass pecuniary or economic harm"); *see also United States v. Provenzano*, 605 F.3d 85, 96 (3d Cir. 1979) (noting that, in determining whether a defendant would pose a danger to the community, the trial court may consider the "defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical"). Taylor's criminal record involves numerous financial crimes, the most recent of which included conspiracy to commit wire fraud and wire fraud, the same crimes charged here. His record reveals a pattern of repeatedly using deception to obtain money and property, suggesting he is unable or unwilling to reform his behavior. If released, there is a serious danger that Taylor would continue to engage in this pattern of criminal activity, putting the community at risk of further fiscal harm. The conditions of release suggested by the defense, such as house arrest and surrender of travel documents, [DE 90 at 418 – 19], are not likely to ensure the safety of the community when many financial crimes can be committed using means available if released. As a result, this factor favors detention.

The § 3142(g) factors together ultimately establish that there are no conditions of release that will reasonably assure the appearance of the defendant and the safety of the community. Accordingly, pretrial detention is warranted.

## IV. CONCLUSION

After reviewing the relevant materials de novo, the Court concludes that there is no condition or combination of conditions to reasonably assure the safety of the community and the appearance of Taylor; therefore, Taylor should remain in the custody of the United States Marshals Service pending trial of this matter. Accordingly, **IT IS ORDERED** that Defendant's Motion to Revoke the Order of Detention [DE 90] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

September 22, 2025